IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

IVORY JONES, Individually, and as
Guardian of EDWARD MOONEY, JR.                                   PLAINTIFF

v.                          No. 2:22-cv-152-DPM

DALE ACOSTA, Individually and in His
Official Capacity as Chief of Police for the
City of Marianna, Arkansas*                                      DEFENDANT

## ORDER

Ivory Jones has sued Marianna Police Sergeant Dale Acosta for many violations of federal and state law. She presses some claims individually and others as guardian of her son, Edward Mooney, Jr. Sergeant Acosta has moved for summary judgment. Where there is a genuine dispute of material fact, the Court takes the record in the light most favorable to the non-movant. *Oglesby v. Lesan*, 929 F.3d 526, 531-32 (8th Cir. 2019). The Court will not, however, accept any party's version of a fact where that party has "failed to meet proof with proof." *Conseco Life Insurance Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010).

---

* It is undisputed that Acosta neither is nor was the Chief of Police. Doc. 19-11. The Court directs the Clerk to update the docket to reflect his true title: Patrol Sergeant for the Marianna Police Department. *Ibid.*

*

Mooney suffers from schizophrenia. From 2018 to 2021, he stopped taking his medication. His untreated mental illness caused him to "have outbursts and a quick temper." *Doc. 30 at 2-3*. His mental instability resulted in several of his arrests (and arrest warrants) during that time. Marianna is a small town. Sergeant Acosta made many of those arrests. In response, Jones complained to Police Chief Daniel Strickland and Mayor Jimmy Williams about Acosta "constantly harassing" Mooney. *Doc. 19-1 at 29*.

On 25 February 2021, Marianna Police Sergeant Daniel Lawson spotted Mooney outside a Happy Mart. Lawson arrested him based on an active warrant for unpaid fines. He also charged Mooney with two counts of disorderly conduct. *Doc. 19-20*. Sergeant Acosta was the supervisor on duty at the police station that day; he was not involved in Mooney's arrest.

Jones spoke with Sergeant Acosta at the police station shortly after Sergeant Lawson arrested Mooney. She told him she was Mooney's guardian, he needed his medication, and he had an appointment with his healthcare provider, Mid-South Health Systems (now Arisa Health). Mid-South's records show an appointment for Friday, March 5th—more than a week later. *Doc. 19-24 at 1 & 5*. Jones asked Acosta to arrange transportation for Mooney from the jail to his appointment.

After Acosta refused, she complained to Chief Strickland and Mayor Williams about his refusal. *Doc. 19-1 at 12 & 26.*

Mid-South evaluated Mooney by a telehealth appointment the next day. The healthcare provider noted that he "presented as calm and cooperative with logical and coherent speech." *Doc. 30 at 7.* The provider also determined that he did not "meet the criteria of being gravely disabled," and "recommended that Mr. Mooney remain in jail pending his hearing so officers can assist Mr. Mooney establishing outpatient services." *Ibid.*

On deposition, Jones testified that someone from Mid-South also assessed Mooney at the jail. The assessor told her Mooney was okay, but recommended he go to the hospital. *Doc. 19-1 at 38 & 40.* The record is fuzzy about when this assessment took place. This much is clear, though. According to Jones, Chief Strickland refused to take Mooney to the hospital because he owed too much in fines, the jail didn't have enough staff to transport him, and Mooney didn't want to go. *Ibid.*

Mooney sat in the city jail for approximately thirteen days—from February 25th to March 9th—until he first appeared before a judge. *Doc. 32-2.* Jones says she "also asked Dale Acosta to make sure [her] son appeared before a Judge, but he refused." *Doc. 29-6.* It's unclear what came of the March 9th hearing, or when Mooney was eventually released from jail.

Seven months later, in October 2021, Sergeant Acosta stopped Jones early one morning for driving twelve miles over the speed limit in a school zone. He cited her for "inattentive driving," not speeding. *Doc. 19-32*. At the top of the citation, he wrote and circled the letters "BA" — short for "bad attitude." *Doc. 19-5 at 20*. Jones says she was neither speeding nor driving inattentively. And she claims that Acosta cited her in retaliation for her February 2021 complaint about him not getting Mooney to the doctor. The traffic citation was later dismissed when Sergeant Acosta missed Jones's court date.

*

Sergeant Acosta seeks summary judgment on all Jones's claims, including the representative ones. She has not responded to his points challenging many of those claims:

- failure to train;
- failure to supervise;
- failure to screen;
- deliberate indifference to medical needs; and
- unlawful stops based on Mooney's various arrests.

Jones has therefore waived all these claims by abandoning them. *Satcher v. University of Arkansas at Pine Bluff Board of Trustees*, 558 F.3d 731, 734-35 (8th Cir. 2009).

\*

Jones hasn't created a genuine dispute of material fact about whether Sergeant Acosta had probable cause to stop her for speeding. In Arkansas, it's illegal to exceed 25 miles per hour in "a school zone during school hours when children are present and outside." ARK. CODE ANN. § 27-51-212. Jones admits that she was in a school zone "around seven something" in the morning and that there were "little kids walking on the side of the street." *Doc. 19-1 at 28*. Acosta said that his rear radar clocked her driving 37 miles per hour. *19-11 at 2*. He also said he had tested his rear and front radars that morning "to ensure they were calibrated and working correctly." *Ibid.* Acosta explained this to Jones when he stopped her. *Doc. 19-32*. She doubted him and asked to see his radar. He declined, telling her, "You'll have your day in court for that." *Doc. 28*.

The parties genuinely dispute whether Jones was speeding. *Doc. 29-6*. But their dispute is not material. What matters is whether Sergeant Acosta had "an objectively reasonable basis to believe" that Jones had committed a traffic violation. *Lockhart v. Siloam Springs*, 113 F.4th 844, 849 (8th Cir. 2024). It's undisputed that Sergeant Acosta's radar showed Jones driving over the speed limit. Jones denies this fact, citing her affidavit. *Doc. 30 at 9*. But her affidavit neither controverts nor addresses the radar issue. *Doc. 29-6*. Her failure to meet proof with proof amounts to an admission here. LOCAL RULE 56.1(c); *Conseco Life*

-5-

*Insurance Co.*, 620 F.3d at 909. The radar reading, of course, gave Acosta probable cause to stop her. *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016).

Jones emphasizes that Sergeant Acosta cited her for inattentive driving, not for speeding. Doc. 31 at 20-21. But the offense he cited her for doesn't defeat his otherwise valid probable cause for the stop. *Devenpeck v. Alford*, 543 U.S. 146, 152-54 (2004). Her Fourth Amendment unlawful stop claim, and her First Amendment retaliation claim, therefore fail as a matter of law. *Lockhart*, 113 F.4th at 489 (unlawful stop); *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (retaliation). Her Fourth Amendment malicious prosecution claim fails because the inattentive driving charge did not cause or continue her detention. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562-64 (2024). Jones also argues a state law malicious prosecution claim in her brief. Doc. 31 at 20. But she didn't plead that claim. And she cannot amend her complaint in her brief. *Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1057 (8th Cir. 2004). Finally, absent an underlying constitutional violation, the City of Marianna cannot be held liable under § 1983. *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018).

\*

That leaves the representative claims that Jones brings on Mooney's behalf.

**Disability Discrimination.** The claims brought under Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act fail as a matter of law. Sergeant Acosta can't be sued in his individual capacity under either statute. *Dinkins v. Correctional Medical Services*, 743 F.3d 633, 634 (8th Cir. 2014) (*per curiam*). And the official capacity claims, which are really against Marianna, lack merit. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Jones hasn't specified the theory of her disability discrimination claims. "Discrimination under the ADA and the Rehabilitation Act encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability." *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014). But the context of her claims, and the authority she has cited, indicate a failure-to-accommodate claim. She must therefore "show that the requested accommodation is reasonable on its face[.]" *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004). She hasn't.

Jones asserts two violations here—Marianna's failure to transport Mooney to his medical appointment, and its failure to arrange a prompt first appearance. *Doc. 31 at 6.* Nothing in the record suggests that Mooney was denied medical transportation because of his disability. The parties agree: "If the Marianna City Jail has enough staff, a city employee may be permitted to transport an inmate to a doctor's appointment, including mental health treatment." *Doc. 30 at 8.*

They also agree that the jail "did not have enough staff to transport [Mooney]." *Doc. 30 at 6*. He therefore had the same access to the jail's medical transportation services as non-disabled detainees. *Hall v. Higgins*, 77 F.4th 1171, 1181-82 (8th Cir. 2023). He was not denied a ride because he was disabled. *Compare Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998). There's likewise no evidence that his disability affected his court date. Because "an accommodation is reasonable only if it is related to the accommodated individual's disability[,]" Jones has not provided sufficient evidence to get to the jury on the disability-related claims. *Allen v. Interior Construction Services, Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000); *see also Peebles*, 354 F.3d at 768-69.

**Prompt First Appearance.** Mooney's constitutional rights were violated, though, when he was held in the Marianna City Jail for approximately thirteen days without an initial appearance before a judicial officer. *Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004); *Clay v. State*, 318 Ark. 122, 134, 883 S.W.2d 822, 828 (1994); *see also* Ark. R. Crim. P. 8.1 (requiring an initial appearance "without unnecessary delay"). Genuine issues of material fact exist about who was responsible for that nearly two-week delay.

Sergeant Acosta emphasizes that he was not responsible for Mooney's February 2021 arrest. But there's evidence that he knew of Mooney's prolonged detention and disregarded the delay. As Jones put it in her affidavit: "When [Mooney] was arrested in February 2021,

-8-

I also asked Dale Acosta to make sure my son appeared before a Judge, but he refused." *Doc. 29-6*. She also said she checked on her son "every day," but that he "never received a court appearance." *Ibid*. The record is thin here; but taking it in the light most favorable to Jones, she has created a question for the factfinder about whether Sergeant Acosta "made a conscious decision to do nothing." *Hayes*, 388 F.3d at 674 (finding individual liability for jail administrator who knew about delay but was not the arresting officer). And because Mooney's right to a prompt first appearance was clearly established, Sergeant Acosta is not entitled to qualified immunity. *Hayes*, 388 F.3d at 675. This claim, and the echoing claim under the Arkansas Civil Rights Act, therefore survive summary judgment.

As to the city, Sergeant Acosta argues that Jones's complaint "does not clearly assert an unconstitutional custom claim against the City of Marianna for an alleged failure to provide detainees with a prompt first appearance." *Doc. 32 at 6*. The Court disagrees. Jones's official capacity claim against Sergeant Acosta is really against Marianna. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). To survive summary judgment here, she must identify a city policy or custom was the moving force behind Mooney's constitutional injury.

There is near unanimity on how Marianna got its arrestees before a judge for a first appearance. Those charged with felonies were seen

within three days. *Doc. 29-3 at 29.* According Mayor Williams, folks like Mooney who were being detained on misdemeanor charges were given the next available court date; and that date was "up to the judge" to set. *Doc. 29-3 at 30.* Sergeant Acosta echoed that drill in his deposition: "There was never a direct policy within the department on court. Court was decided by the judge and the prosecutor on what days we had court." *Doc. 19-5 at 14.* Chief Strickland explained that if arrestees didn't bond out, they would be "given the next available court date." *Doc. 29-2 at 28.*

Those bond amounts were already "set on any misdemeanor." *Doc. 29-3 at 30.* There was an established schedule of bond amounts. As Mayor Williams put it, "You [didn't] have to go before a judge on that." *Doc. 29-3 at 29.* So when could an indigent arrestee like Mooney expect to see a judge? That depended on his arrest date. But generally, the state district judge held court about once every two weeks. *Doc. 29-3 at 30-31.* (The mayor noted that it used to be about once every week when a municipal judge, rather than a district judge, was still handling first appearances. *Doc. 29-3 at 30-31.*)

Jones leans hard on Mayor Williams's testimony to establish a city policy. *Doc. 31 at 2-3.* To be sure, the practice that the mayor and others described tracks the municipal policy in *Hayes*, which the Court of Appeals held unlawful. 388 F.3d at 674. But unlike *Hayes*, that practice was not Marianna's "official" policy. *Ibid.* There is no record

evidence that the Marianna City Council—the entity with final policymaking authority over the police department—prescribed that course of action. *See* ARK. CODE ANN. § 14-52-101; *Brinkley v. City of Helena-West Helena*, 2014 WL 4164614, at *2-*4 (E.D. Ark. 21 Aug. 2014).

The deep issue is whether Jones has put forth enough "evidence from which the jury could reasonably find the existence of a relevant municipal custom." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). It's a close call, but the Court finds that she has. City employees set arrestees' court dates in accordance with an unlawful will-call practice like the one in *Hayes*. That practice was widely known and routinely followed in this small town. And the record suggests that it was the moving force behind Mooney's prolonged detention without a first appearance.

Acosta argues that there is no direct evidence that the city council knew of this practice. *Doc. 32 at 8*. True. But in the circumstances, a reasonable juror could find that it "should have known of it." *Riis v. Shaver*, 458 F. Supp. 3d 1130, 1199 (D.S.D. 2020), *aff'd on other grounds*, 4 F.4th 701 (8th Cir. 2021) (quotations omitted). There is no daylight between the practice that each city official (mayor, police chief, police sergeant) described. The preset bond amounts reinforce that city-wide, settled understanding. And the city's size—about 3,575

people\*\* — suggests that its city council had at least constructive knowledge of how detainees' first appearances were scheduled. *Riis*, 458 F. Supp. 3d at 1199. "Deeply embedded traditional ways of carrying out [city] policy, such as those of which [Jones] complains, are often tougher and truer law than the dead words of the written text." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 n.56 (1977), quoting *Nashville, C. & St. L. Ry. v. Browning*, 310 U.S. 362, 369 (1940) (Frankfurter, J.). There is a triable issue here about whether the Marianna City Council had notice of an unlawful will-call practice in its jail.

\*   \*   \*

Motion for summary judgment, *Doc. 19*, mostly granted and partly denied. The jury will decide whether Sergeant Acosta, Marianna, or both violated Mooney's right to a prompt first appearance. The remaining claims are dismissed with prejudice.

This case is first out for trial in Helena the week of 10 February 2024. In light of this Order, the Court respectfully suggests that the parties consider a settlement conference. Please confer and file a joint report by 3 December 2024 on whether both sides are willing to

---

\*\* The Court takes judicial notice of the 2020 U.S. Census data for Marianna, Arkansas. *See* Marianna, Arkansas, U.S. CENSUS BUREAU, https://data.census.gov/profile/Marianna_city,_Arkansas?g=160XX0 0US0544120 (last visited 18 November 2024); Fed. R. Evid. 201.

participate. If not, the trial will proceed as scheduled absent an interlocutory appeal. The Amended Final Scheduling Order's deadlines remain in place whether there's a settlement conference or not.

    So Ordered.

                                       _____
                                       D.P. Marshall Jr.
                                       United States District Judge

                                       19 November 2024